CITY OF KNOXVILLE *v.* HETH *et al.*

*(Nashville,* December Term, 1947.)

Opinion filed February 28, 1948.

322

DONALDSON, MONTGOMERY & KENNERLY, of Knoxville, for plaintiff in error.

S. B. CAMPBELL, of Wytheville, Va., and CATES, FOWLER, LONG & FOWLER, of Knoxville, for defendants in error Jeannette C. Heth, Hamilton Bank and J. B. & W. G. Brownlow.

H. T. KERN, of Knoxville, for defendants in error Geo. Cavalaris and Geo. Kotsianas.

MR. JUSTICE BURNETT delivered the opinion of the Court.

In this suit the City of Knoxville, a municipal corporation, acting by and through the Knoxville Utilities Board,

a corporate agency of said municipality, seeks to condemn the real property, a business building adjoining the petitioner's general administrative offices, of the defendants by exercise of the right of eminent domain. We will refer to the City of Knoxville as the "City"; to the Knoxville Utilities Board as the "Board", and the property owner and those interested therein as the "Defendants".

The petition was filed pursuant to Code Sections 3109-3130, inclusive, these being the Code sections prescribing the procedure for the taking of private property for works of internal improvement.

In substance it is alleged that the City owns and operates an electric system, water system and gas system pursuant to statutory authority and that the Board is charged with the management of these combined systems.

The right of the City to acquire and hold real estate, to erect buildings thereon and other improvements necessary for public purposes, and to condemn property needed for public buildings is alleged under applicable statutory enactment.

The City further says that "in the construction, maintenance and operation of its electric, water and gas works, plants and systems and as an essential and integral part thereof, (it maintains offices where persons administering said system work, where records, supplies and equipment are kept, where bills are paid, where the Board meets and where the general management of said systems is carried on." It is said "that the principal offices of the Board have been maintained in a building at the northeast corner of Gay Street and Church Street in Knoxville. That the expansion of the operations of the Board's activities has been such as to make the present offices totally inadequate so that the acquisition of

additional space for said offices is necessary. That public convenience and economy require that such additional space for offices be secured adjacent to the present principal offices of the Board so that said offices can be operated as a unit and so that the present offices may be continued to be used as a part of such unit, and that accordingly it is necessary, desirable and proper that the City acquire the tract of land sought to be condemned for use as a public building and structure which will constitute an essential part of the City's electric, water, and gas works, plants and systems.''

The Board by a duly and properly adopted resolution authorized this action for the reasons substantially as above set out.

The Defendants demurred to this petition on eighteen separate grounds which are grouped or summarized by the City thus:

''(1) Under the State Constitution and under the Federal Constitution, the condemnations of property for the purposes sought by the present suit is prohibited, so that any statute purporting to authorize the City to condemn property for these purposes is a nullity.

''(2) The statutes giving the City the right to condemn property do not give the City the authority to condemn property for the purposes sought by the present suit.

''(3) The City is not using the proper condemnation procedure by bringing the present suit, and the City has not satisfied all requirements that are necessary to authorized the institution of such a condemnation suit.''

The trial court sustained seven grounds of the demurrer. One of these was cured before judgment by the filing of the resolution of the Board heretofore referred

to. The underlying reason for the grounds sustained was that the property sought to be condemned was not an appropriation for a public purpose but was a taking for a private use. The suit was dismissed and this appeal resulted. The Defendants also assign error here to the action of the Trial Court in overruling their other grounds of demurrer.

■ "Eminent domain is the right or power to take private property for public use; the right of the sovereign, or of those to whom the power has been delegated, to condemn private property for public use, and to appropriate the ownership and possession thereof for such use upon paying the owner a due compensation." 29 C. J. S., Eminent Domain, sec. 1.

■ ■ The key to the instant litigation is whether or not the proposed taking is for a "public use". This presents a "judicial question, confided by the people to their courts, to insure a practical enforcement of this constitutional guaranty to the citizen. But where the taking is for a public use, the only remaining restriction on the sovereign power is to pay the fair and reasonable value of the property taken, generally denominated 'just compensation.' " *Southern Railroad Co.* v. *Memphis,* 126 Tenn. 267, 281, 282, 148 S. W. 662, 665, 41 L. R. A. (N. S.), 828, Ann. Cas. 1913E, 153; Federal Constitution, 5th Amendment; Tennessee Constitution, Article I, Section 21.

■ The determinations of "public use" by the state or its agencies are entitled to great weight or respect by the courts, since they relate to matters which should and must have been known by the legislative branch. *New York City Housing Authority* v. *Mueller,* 270 N. Y. 333, 1 N. E. (2d) 153, 105 A. L. R. 905.

■■ The term "public use", as here used, is not capable of exact definition, but is elastic, in order to keep pace with changing conditions. The cases on the subject are legion. Many will be found in an annotation in 54 A. L. R. 7 to 45, inclusive. In our judgment the best approach to the question is to be found in the following excerpt from *Dornan* v. *Philadelphia Housing Authority*, 331 Pa. 209, 200 A. 834, 840: "On the whole, although the cases on this subject in Pennsylvania have been comparatively few in number, it may fairly be. stated that, while firmly maintaining the principle that private property cannot be taken by government for other than a public use, they justify the conclusion that judicial interpretation of 'public use' has not been circumscribed in our State by mere legalistic formulas or philological standards. On the contrary, definition has been left, as indeed it must be, to the varying circumstances and situations which arise, with special reference to the social and economic background of the period in which the particular problem presents itself for consideration. Moreover, views as to what constitutes a public use necessarily vary with changing conceptions of the scope and functions of government, so that today there are familiar examples of such use which formerly would not have been so considered. As governmental activities increase with the growing complexity and integration of society, the concept of 'public use' naturally expands in proportion." It is such a well recognized principle that the generation and distribution of electric current, supply of water and gas to the people is a "public use" we do not deem it necessary to cite authority therefor. The only question, therefore, is whether or not the land sought to be condemned is such "an essential and integral part thereof" as to make its use a "public use".

In *Nichols* v. *Central Virginia Power Co.*, 143 Va. 405, 130 S. E. 764, 767, 44 A. L. R. 727, it was well said: "It is difficult at times to observe the line of demarcation between private benefit and public use. When the two are thus so blended—1 'the judicial practice in such cases is to approve the undertaking if it is capable of furthering a public use, and disregard the private benefit as a mere incident.' "

It is conceded that the City in its operation of the utilities herein does so in its proprietary or individual capacity rather than in its legislative or governmental capacity. It is thus governed, for the most part, by the same rules that control a private, individual or business corporation. 4 McQuillin, Mun. Corp., p. 3836; *Memphis Power & Light Co.* v. *City of Memphis*, 172 Tenn. 346, 112 S. W. (2d) 817. With this statement of the law as a premise the Trial Court apparently concluded that the City had no more rights herein than a private business concern would have. This is fallacious because there are many instances when a city or municipality thus acting may acquire property for a "public use" when a private enterprise could not. Notable among these, as an illustration, are: Public Market, 18 Am. Jur., pp. 679, 680; 4 McQuillin, Mun. Corp., pp. 532, 533; 1 Lewis, Eminent Domain, 532, 533; Parking lot for automobiles, *Miller* v. *City of Georgetown*, 301 Ky. 241, 191 S. W. (2d) 403; Cemetery purposes, 10 Am. Jur., pp. 494, 495. We have read numerous cases under these instances. The reasoning of the various courts differs. Be that as it may the above illustrations are instances where a municipality acting in a proprietary capacity has been granted the right of eminent domain.

Common sense and reason dictate to us that in matters of this kind, a much broader latitude should be given a municipality, even in its proprietary function, than is given a private corporation or individual. As was said by Mr. Justice HOLMES, speaking for the Court in *Springfield Gas & Electric Co.* v. *City of Springfield*, 257 U. S. 66, 42 S. Ct. 24, 25, 66 L. Ed. 131, ''But we agree with the Supreme Court of the State that the difference between the two types of corporation warrants the different treatment that they have received. The private corporation whatever its public duties is organized for private ends and may be presumed to intend to make whatever profit the business will allow. The municipal corporation is allowed to go into the business only on the theory that thereby the public welfare will be subserved. So far as gain is an object it is a gain to a public body and must be used for public ends. Those who manage the work cannot lawfully make private profit their aim, as the plaintiff's directors not only may but must.''

The Supreme Court of Virginia in *Light* v. *City of Danville*, 168 Va. 181, 190 S. E. 276, 287, reasoned thus: ''An examination of the numerous authorities cited to maintain the principle that the city maintains and operates a public utility in its private or proprietary capacity reveals that they deal with the rights, duties, and liabilities of the city in connection with the construction and operation thereof rather than with the right of the public to the use thereof. The test of public use is not based upon the function or capacity in which, or by which, the use is furnished. *The right of the public to receive and enjoy the benefit of the use is the determining factor whether the use is public or private.* We have already defined the term 'public use' in connection with the pre-

ceding assignment of error. Such definition nowhere includes in its terms a requirement that the capacity in which, or by which, the use is rendered to the public is to be taken into consideration. A public use may exist where the owner constructs and operates a plant in a private or proprietary capacity. Thus a public service corporation constructs and operates its plant in its private or proprietary capacity, and yet the property is subject to the public use. The rights of the public to the use of the utility and the responsibility of the owner thereof for ministerial conduct in the operation of the utility are determined under different rules and standards. Different principles of law apply in the attempted enforcement of the separate responsibilities. This distinction between the capacities is designed to prevent a city from relying on the exemption possessed for governmental functions.'' (Emphasis that of this Court.)

This Court, in *Trustees, etc.* v. *Clark*, 112 Tenn. 483, 494, 80 S. W. 64, 67 enunciated the same principle thus: ''Private corporations are those created for the immediate benefit and advantage of the individuals constituting them, and the franchises conferred are to be exercised for their advantage. The corporation stands to them in the relation of trustee holding the property owned by it for, and dividing the profits arising from its management and the employment of its franchises for, these individuals as cestuis que trust. Upon the other hand, public corporations are created for public purposes, and the property controlled by them is devoted to the objects for which they are created. The corporators have no private beneficial interest either in the franchises granted or the property controlled. The only private right which an individual can have in such a corporation is the right of

being and acting as a corporator. So far as the property of the corporation is concerned, the interest which the corporators have as individuals is that common interest which all citizens have in property belonging to the state. Nor is the character of this interest affected by the source from which the property comes. A purchase by or a gift of property to the corporation is in reality a purchase by or a gift to the public, and is to be administered by the corporation as an agency of the state."

■ The mere fact that cities, as is the City in the instant case, are permitted by the general law to acquire a public utility, carries the direct implication that as a public agency it shall be held and used for the public welfare and is therefore a "public use". Public ownership results in greater "public use" and broader public benefit than private ownership. *State ex rel. Washington Water Power Co.* v. *Superior Court,* 8 Wash. (2d) 122, 111 P. (2d) 577.

This Court in *Ryan* v. *Louisville & N. Terminal Co.,* 102 Tenn. 111, 121, 50 S. W. 744, 746, 45 L. R. A. 303, wherein a private corporation, not a municipal corporation, was involved, has fixed a kind of a yard stick under which "public use" may be gaged, in these words: "It must in some way enlarge the resources, increase the industrial energies, promote the productive power of, or afford increased facilities for, the rapid exchange of thought or trade, or otherwise answer the growing needs of the community as such, before the use becomes public, and the agency controlling passes under governmental control."

■ In the instant case the corporation is a wholly owned and controlled governmental agency. The property sought is centrally located adjoining property now used

for the purpose for which this is sought but wholly inadequate to satisfy the present needs. Those administertering this municipal project must be housed; it is to the public interest that they be housed in an accessible place where the public may be served according to its needs. A large group of the citizens of the City go there to pay their bills. The purpose of this proposed acquisition is an integral part of this municipal system, as much so as the supplying of electric current, water or gas. The system, by statute is divided into "a Bureau of Water, a Bureau of Power, a Bureau of Gas, and a Bureau of Accounts." Private Acts 1923, chap. 412, sec. 32-A(4), as amended by Private Acts 1945, chap. 387, sec. 1. The property sought will house the last of these "Bureaus". The fact that this is a part of a single system must be given great weight. It is to the interest of the public to maintain the system as a unit and not divide this "Bureau" into two separate buildings.

It thus seems to us that this building will be a "public building" for a "public use" just as any other "public building" might be. It will be wholly owned, operated and conducted for the public benefit. It, therefore, seems clear to us under the facts as here plead, for the reasons heretofore discussed, that the acquisition of the land in question is for a "public use". This conclusion is founded on a practical view of the meaning of "public use." "Public use" is interpreted herein in the light of the exigencies and facts present in the individual case.

■■■■■ Having determined that the proposed taking is for a "public use", it is the rule that a municipal corporation's determination of necessity in these cases is conclusive upon the courts in the absence of fraudulent, arbitrary, or capricious action by the City. An excerpt

from an opinion of this Court has been often quoted in this aspect of the instant case. We again quote and adopt this statement which is: "But all other incidents of the taking are political questions, for the determination of the sovereign, and not judicial questions, for the determination of the courts. Selecting the property to be taken, as contradistinguished from similar property in the same locality, determining its suitableness for the use to which it is proposed to put it, as well as deciding the quantity required, are all political questions, which inhere in and constitute the chief value of the power to take." *Southern Ry. Co.* v. *Memphis,* 126 Tenn. 267, 282, 283, 148 S. W. 662, 41 L. R. A. (N. S.), 828, Ann. Cas. 1913E, 153; 4 McQuillin, Mun. Corp., 2d Ed. Rev., 473-482; 18 Am. Jur., 733, 734; 1 Lewis, Eminent Domain, 3d Ed. 1909, 674-677.

By statutory enactment amending the charter of the City the Board is given these powers of legislation wherein it can "by motion or by resolution passed on a single reading . . . effective immediately upon passage" decide what property is to be taken, the quantity needed, and the necessity therefor. Chapter 387, Private Acts of 1945, and Chapter 137, Private Acts of 1947, of the Legislature of Tennessee. The Board is given this power, just as is the Council given the power to enact an ordinance, by the authority of the Legislature. To say that this must be done by an ordinance passed by the City council is the same that might be said about an ordinance passed by the council, i. e., that the Legislature must enact the ordinance. As was said in *Barnidge* v. *United States,* 8 Cir., 101 F. (2d) 295, 299: "But the Secretary has determined that it is necessary and expedient to acquire these lands, and the duty of determining that fact was

vested in him and not in the courts. When Congress delegates to an administrative officer the power to determine necessity, his determination, with exceptions not here important, is not subject to judicial review.'' Citing many authorities.

The Legislature of the State granted the City its charter by Chapter 412 of the Private Acts of 1923. Almost if not every legislature since has in some way amended this charter. Subsection (34) of Section 5, of the charter as it now stands provides: ''(34) Appropriation of land. To take and appropriate lands and grounds within said city for widening streets, or parts of streets, or laying out new streets, avenues, squares, parks, promenades, viaducts and town, or for the building of sewers, conduits, electric light plants, hay markets, market houses, engine houses, station houses, workhouses, city halls, auditoriums, detention hospitals, juvenile detention homes, hospitals, pest houses, disinfecting or disposal plants, garbage or night soil plants, disposal plants, incinerating plants, dumps, wharves, waterworks purposes, pumping stations, settling basins, reservoirs and rights-of-way for water mains, storm or sanitary sewers, public schools, and other public structures, buildings or improvements, or any other public purpose, and a declaration of a public purpose by the Legislative Body shall be conclusive, when the public convenience or economy requires it, under the provisions of Sections 1388, 1389, 1390, and 1391, of the Code of Tennessee, the same being Sections 1981 to 1984, both inclusive, of Shannon's Annotated Code of Tennessee.'' Private Acts 1925, chap. 93, sec. 4.

As the various utilities here involved have been acquired by the City appropriate statutory enactment has been passed by the legislature amending the city charter.

Under this charter as now amended the complete jurisdiction of these utilities is vested in the Board giving it independent control of said utilities. Priv. Acts 1923, chap. 412, sec. 32-A(6), as amended by Chap. 387, Private Acts 1945. By subdivision (k) of the act last above referred to "the Board is hereby given the same power and authority to exercise the right of eminent domain on behalf of the system which power and authority is now possessed by, or may hereafter be given to the City Council."

Thus it is that the Board has all the powers of eminent domain as are contained in subsection (34) of section 5, above quoted, as effectively as if said language had been bodily copied in the act giving the Board power of eminent domain. Under subsection 6 of the Acts of 1945 above referred to it is provided: "This Act shall be liberally construed to accomplish the purpose and intent expressed herein."

All of these provisions show a clear Legislative purpose to grant the City and in turn the Board all the power needed to acquire lands by purchase or by condemnation which it deems necessary for carrying out the purposes of the various Acts. The Board is not barred from the exercise of common sense or good business judgment in the operation and construction of these utilities. *Brown* v. *United States,* 263 U. S. 78, 44 S. Ct. 92, 68 L. Ed. 171.

We have herein concluded that the acquisition sought is for a "public use" as a public building wherein public servants would be housed and the public invited to pay their various utility bills. Thus it seems clear to us without argument that the language of subsection (34), section 5, "and other public structures, buildings" above quoted included the land sought. This language

and the various things therein specified are clearly not limited to any specific works, acquisition or by any specific thing that would exclude the land sought for the purpose for which it is sought. A strained construction would be necessary to conclude otherwise.

The prescribed code sections for condemnation under subsection (34), section (5) of the charter are not restrictive. They are cumulative so that the City may proceed as it has under the general condemnation statutes. *Cookeville* v. *Farley*, 171 Tenn. 260, 102 S. W. (2d) 56.

For the foregoing reasons, we conclude that in permitting the condemnation here sought there is no violation of either the State or Federal constitutions. Of course the cause must be remanded for the purpose of fixing the value of the acquisition sought and the payment therefor. We have not herein taken up each authority cited by the respective parties. To do so would unduly prolong this opinion. As it is, it is too long. Suffice it to say that we have carefully considered every authority cited, and many more, and consider they are not in point because either based upon a different factual situation or statutory enactment. We wish to point out that our holding in the case at bar is confined to the situation herein presented.

The judgment of the Trial Court is accordingly reversed and the cause remanded for further proceedings consistent with this opinion. The costs of appeal will be taxed to the Defendants. The costs below will await the outcome there.

All concur.