**RIVERGATE WINE & LIQUORS, IN-CORPORATED, Plaintiff-Appellee,**

v.

**CITY OF GOODLETTSVILLE, Defendant-Appellant.**

Supreme Court of Tennessee, at Nashville.

March 7, 1983.

Charles A. High, Jr., Patricia J. Cottrell, Nashville, for defendant-appellant.

Norman D. Lane, Nashville, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

The City of Goodlettsville brings this appeal so that this Court may review the Chancellor's decision holding unconstitutional an ordinance regulating the retail sale of alcoholic beverages in that city.

The Plaintiff, Rivergate Wine & Liquors, Inc., is a wine and liquor retail store licensed by the Defendant, the City of Goodlettsville. In 1967, the commissioners of Goodlettsville amended Ordinance No. 66–74 to include the following provision: "No retailer licensed under this chapter shall sell or permit to be sold any alcoholic beverage which has been chilled or refrigerated in any manner."[1] Section 2(1) of the ordinance defines "alcoholic beverage": " 'Alcoholic beverage' or 'beverage' means and includes alcohol, spirits, liquors, wine, and every liquid containing alcohol, spirits, and wine and capable of being consumed by a human being, other than patented medicine, beer, or wine where the latter two (2) contain alcohol of five percent (5%) by weight or less." The Plaintiff has engaged in the business of selling wines and liquors since 1972, and it is one of two retailers licensed under this ordinance.

In 1966, the City of Goodlettsville licensed two retailers to sell wine and liquor. One of these retailers was Floyd Primrose, the other, Mack Smith. At that time, both retailers agreed "not to have an icebox," as wine sales were only 5% of their business income, and so the ordinance was not challenged either before the city council or in the courts. Floyd Primrose, joined by his brother, Arthur, moved to the present business location in Rivergate Plaza in 1972. They formed a corporation, which is the Plaintiff in this suit. It became increasingly evident that wine sales were growing, making up a larger percentage of the Plaintiff's income. Moreover, the effects of the ordinance began to manifest themselves: the Plaintiff lost customers seeking chilled wine to neighboring retailers in nearby cities. In 1978, Arthur Primrose petitioned the city commissioner to repeal the restriction on the sale of chilled alcoholic beverages. A proposed ordinance repealing § 16(12) of Ordinance No. 66–74 failed.

The Plaintiff brought this action complaining that the ordinance restricted its

---

1. Goodlettsville, TN, Ordinance 66–74, § 16(12) (Dec. 5, 1966, as amended by Ordinance 66–75, Feb. 20, 1967). This ordinance regulates the sale of alcoholic beverages, including the issuance of licenses.

ability to compete with retailers located within the adjacent areas of Hendersonville and Madison, which retailers provide the exact service forbidden the Plaintiff by the ordinance. Additionally, the Plaintiff alleged that the ordinance violates both the federal and state constitutions as it is "unreasonable and has no basis in fact or need for its existence," that it deprives the Plaintiff of valuable property without compensation in violation of the Fifth Amendment of the federal constitution, and that the Plaintiff, at the time the action was brought, suffered irreparable harm by the continuation of the ordinance and its enforcement. The Plaintiff sought a restraining order. The Chancellor granted the restraining order and set a date for a hearing on a temporary injunction. After the hearing, the Chancellor found the Plaintiff suffered no immediate irreparable harm from the enforcement of the ordinance. The court dissolved the restraining order and denied the injunction. In denying the injunction the Chancellor noted that the ordinance was in effect when the Plaintiff's license was granted and found that the application for injunction had been unnecessarily delayed. The Chancellor also found that the Plaintiff was not presently equipped to sell chilled alcoholic beverages.

After a trial on the merits, the Chancellor concluded that the ordinance did not deprive the Plaintiff of a property right without compensation, and that the ordinance was not discriminatory. We affirm these rulings of the Chancellor. The Chancellor also found, however, that the ordinance was an arbitrary and unreasonable exercise of the Defendant's police power to regulate the sale of liquor. Reviewing the ordinance in the light of "current Tennessee and Goodlettsville policies on consumption of alcohol," the court was of the opinion that "no rational basis exists to prohibit sellers from selling 'chilled' alcoholic beverages to the public." The court continued:

> It is not reasonable to prohibit sellers from selling chilled alcoholic beverages when they are available throughout the City. Neither is Goodlettsville's goal to reduce consumption of alcoholic beverag-

es accomplished: When the public can consume all the chilled liquor they desire at a nearby bar or hotel, when the public can "carry-out" and consume all the chilled beer they desire at a nearby grocery, and when the public can purchase and consume all the warm liquor they desire at a nearby store. Perhaps, in a day long ago, when liquor could not be purchased and consumed on the premises and consumption took place solely in the home, this ordinance served a purpose, but today it does not.

We do not agree with the Chancellor on this issue; therefore, we reverse his ruling.

**I**

Eminent domain is the inherent power of a sovereign to take private property for the use of the public. *City of Knoxville v. Heth,* 186 Tenn. 321, 210 S.W.2d 326 (1948). This power may be delegated to municipalities. *Id.* Under the Fifth Amendment of the United States Constitution, the only right reserved to a property owner who has suffered a "taking" at the hands of the sovereign is the right to receive fair and reasonable compensation for the property. *Id.* The Plaintiff asserts the eminent domain provision of the Fifth Amendment as a basis for an action to recover what it believes to be a property interest. The Plaintiff's dependence on that amendment is misplaced, however, as the amendment reserves no such cause of action. A sovereign's eminent domain powers are absolute and total, limited only by the amendment's mandates of public use and just compensation, and by the provisions of Article I, § 21 of this state's constitution. *County Hwy. Comm'n. v. Smith,* 61 Tenn.App. 292, 454 S.W.2d 124 (1969); *Southern Ry. v. City of Memphis,* 126 Tenn. 267, 148 S.W. 662 (1912).

In the present case, the Plaintiff has not been injured by an exercise of eminent domain powers. The Plaintiff has failed to show that some property interest which it possessed has been taken by the City of Goodlettsville. Such an interest cannot be found in the license to sell liquor,

as it has long been settled by statute, and expounded by our decisions, that a liquor license does not confer a property right. *See* T.C.A. § 57–3–104; *Sparks v. Beer Committee of Blount County,* 207 Tenn. 312, 339 S.W.2d 23 (1960); *McCanless v. Klein,* 182 Tenn. 631, 188 S.W.2d 745 (1945). We have held that the license is merely a temporary permit, a privilege, to do what would otherwise be unlawful. *McClellan v. State of Tennessee,* 199 Tenn. 60, 282 S.W.2d 631 (1955). Moreover, we note the ordinance pursuant to which the Plaintiff's license was issued expressly provides that no property right is vested in the licensee by virtue of the license.[2] The privilege granted under the ordinance is certainly limited by the provisions of that ordinance and by the laws of this state.

## II

▮ It is in exercise of the police power that ordinances regulating liquor are enacted. *Landman v. Kizer,* 195 Tenn. 13, 255 S.W.2d 6 (1953). Although no property right vests in a liquor licensee, those who regulate liquor do not possess unbridled discretion. In *Wise v. McCanless,* 183 Tenn. 107, 191 S.W.2d 169 (1945), the plaintiff operated a liquor store under a license for the then current year. The store was located immediately adjacent to a night club where liquor was consumed, though not served by the establishment. During the year of the Plaintiff's license, the commissioner of finance and taxation promulgated a regulation which provided in relevant part: "No retail liquor store may be operated within one hundred feet of any building, room, or other place to which the public are admitted and in which alcoholic beverages . . . are consumed by members of the public . . ." *Id.* 191 S.W.2d at 170. The plaintiff brought suit complaining that the regulation effectively voided his license and that the enforcement of the regulation against

him would cause irreparable injury. This court agreed and granted the plaintiff relief.

▮ While recognizing the broad powers of the state—and municipalities exercising power pursuant to statute—to restrict, regulate, or to prohibit altogether, the sale of liquor, the court held that, however absolute the police power may be, the exercise of that power is subject to the implied limitation of reasonableness. The police power does not include the authority to promulgate and enforce regulations which are unreasonable, oppressive or discriminatory. *Id.* 191 S.W.2d at 171.

▮ Our inquiry, then, must be whether the ordinance in the present case is unreasonable or discriminatory. In *Wise,* the court engaged in a two-part analysis of the standard of "reasonableness." First, the regulation must bear some relation to a legitimate interest protectable by the police power. Second, the regulation may not be unreasonable or oppressive as to the licensee. The Court in *Wise* found the regulation's relation to a protectable interest, but concluded that the regulation was unreasonable and oppressive as it was applied to the plaintiff in that case.

▮ At the outset, we think it important to point out that the one challenging a regulation which on its face is valid has the burden of showing the regulation is not reasonably related to a protectable interest or that it is oppressive in its application. The ordinance will be presumed valid. And as we do not sit to substitute a plaintiff's judgment or our judgment for the judgment of those charged with making laws and regulations, a plaintiff must show that there is no basis in reason for the ordinance. It will not suffice to show that there are other and better ways of effecting the same ends.[3]

---

2. Ordinance 66–74, § 9(10).

3. Specifically, we note the exchange, at trial, between Plaintiff's counsel and the city manager:

Q. Let me ask you, Mr. Myers, do you know of any public purpose that this prohibition against chilled wine serves in the City of Goodlettsville? Can you think of a one it serves . . .?

■ The Plaintiff has failed to carry its burden. The major portion of the Plaintiff's proof concerns the effect of the ordinance on the Plaintiff's economic interests. While this may have some bearing on the issue of oppressiveness, it establishes little as regards the ordinance's relation to a legitimate public interest. If the ordinance has a rational basis, economic injury alone will not invalidate the ordinance. The Plaintiff's proof does include evidence that chilled bottles and cans of beer are sold, that chilled wine is sold by the glass in authorized places, and that unchilled wine may be bought without limit from retail liquor stores. On this proof the Plaintiff argues that even if the ordinance were reasonable when it was passed, it is not reasonable today, as the evils which the drafters intended to address are no longer concentrated in the sale of chilled wine. Since a person can drink all he wants in a bar serving liquor by the drink, and since a person can buy all the chilled beer he wants, the Plaintiff concludes the restriction on the sale of chilled wine is of no effect other than to cause the Plaintiff economic grief.

■ We acknowledge the persuasiveness of the Plaintiff's argument. Nevertheless, the argument must fail, as the record establishes a rational basis for the ordinance. In his testimony for the Defendant, Timothy J. Myers, the City Manager of Goodlettsville, defined the city's interest in diminishing the number of incidents of public drunkenness and the number of intoxicated drivers within the city limits. The gist of his testimony is that the city has various ordinances, all of which work together to bring about a safer and healthier environment. There are ordinances which forbid a tavern owner to sell liquor to persons whom he knows to be intoxicated. So it is not entirely true that a person can buy as much chilled wine, by the glass, as he wants. The city's ordinances do distinguish between beer and other light liquors and liquors with an alcoholic content in excess of 5%. But such a distinction is reasonable, as it is the alcohol in alcoholic beverages that causes intoxication. The higher the alcohol content, the quicker a person may become intoxicated. A person who buys chilled beer and begins drinking it in his car as he drives to his destination is less likely to become dangerously intoxicated than one drinking stronger beverages. Further, the ordinance which prohibits persons from possessing open containers of beer or other liquors in public places [4] stands as a deterrent to those who would otherwise consume beer in their cars. As regards the Plaintiff's assertion that hot wine may be bought without limit, there is some truth in the assumption that hot wine is less desirable than chilled wines. Hence, it is within the bounds of reason to assume that one buying hot wine intends to take that wine to a non-public place where it will be chilled before it is consumed.

We are not persuaded that the ordinance lacks a rational basis.

■ Nor do we think the ordinance is oppressive as it is applied to the Plaintiff. In *Wise, supra,* the court found the regulation oppressive as it applied to the plaintiff because the regulation effectively destroyed his permit. It is important to note that, in that case, the regulation was promulgated after the issuance of plaintiff's license. That is not to say an ordinance promulgated during the term of one's license is, *ipso facto,* oppressive. An exercise of the police power oftentimes burdens one or a few for the public good. But when the courts perceive that the burden is too great, they will grant legal or equitable relief. The courts'

A. I think it has an effect of reducing the consumption of a form of alcoholic beverages on the public highways and places in the City of Goodlettsville ...
Q. Well, if you really want to control that, don't you think it would be more sensible for the City Commission just to do away with liquor stores totally in Goodlettsville and beer sales and bars?

. . . . .
That would control it better than this does. This is just one tiny item of sale, a chilled bottle of wine.
A. I'm sure if the elected officials felt that way they would do that.

4. Goodlettsville Municipal Code § 10–229.

authority to render justice as to a particular plaintiff in no way diminishes the police power.

In the present case, the ordinance has been in existence for several years. The Plaintiff was aware of the ordinance when its license was issued, and expected the ordinance to be enforced against itself and the other retailer in the city. It was only after the Primrose brothers changed their business site and became aware of the business that could be had from the sale of chilled wines that they grew concerned about the ordinance. The Plaintiff's motivations in challenging the ordinance are purely economic. Considering this Court's recent decisions holding that municipalities, in the exercise of their police power, are given wide discretion in regulating the sale of intoxicating beverages, *see, e.g., Metro. Gov't of Nashville and Davidson County v. Martin,* 584 S.W.2d 643 (Tenn.1979), we think that Plaintiff's economic interest, in and of itself, is of no legal significance. If we concluded otherwise, the mere assertion of economic injury would check the exercise of the police power. And such a restraint on that power is inconsistent with its nature, that is, the power to act in the public interest.

### III

The nature of discrimination is unequal treatment among like kinds. As all retail stores in Goodlettsville are forbidden to sell chilled wines, it follows there is no unequal treatment and, hence, no discrimination. The Plaintiff argues that Goodlettsville is, perhaps, the only city in the state which has an ordinance prohibiting the sale of chilled wine. While this may or may not be so, it is of no importance since the ordinance in question does not purport to treat similar businesses differently.

For the reasons stated above, we hold the challenged ordinance constitutional, and the judgment of the Chancery Court is accordingly reversed. Costs of this appeal are taxed to the Plaintiff.

FONES, C.J., and COOPER, BROCK and HARBISON, JJ., concur.