The BEER BOARD FOR the CITY OF
GOODLETTSVILLE, Appellant,

v.

The BRASS A SALOON OF
RIVERGATE, INC.,
Appellee.

Supreme Court of Tennessee,
at Nashville.

Jan. 13, 1986.

Rehearing Denied May 5, 1986.

Charles A. High, Jr., Grissim and Hodges, Kimberly K. Whaley, Grissim and Hodges, Nashville, for appellant.

William B. Vest, Hendersonville, for appellee.

## OPINION

FONES, Justice.

The Beer Board for the City of Goodlettsville has appealed to this Court pursuant to T.C.A. § 57–5–109(f) from a decree of the Chancery Court of Davidson County setting aside and vacating the Beer Board's revocation of the beer license of appellee, Brass A Saloon of Rivergate, Inc.

On November 13, 1984, after a hearing at which the Brass A was represented by counsel, Beer Board unanimously voted to revoke Brass A's on-premises beer license effective November 20, 1984. The charges against Brass A may be summarized as follows:

(1) Failing to derive at least 51% of its business revenue from the sale of food as required by Goodlettsville Municipal Code § 2–206.[1]

(2) Selling beer and alcoholic beverages to minors and permitting minors to loiter or congregate about the premises in violation of T.C.A. § 57–5–301(a), (c),[2] Goodlettsville Municipal Code §§ 2–214(5), (8)[3] and 2–216(2), (4).[4]

---

1. Goodlettsville Municipal Code § 2–206. *Types of permits: requirements for on-premises permit* .... The following requirements will be necessary for the issuance of an on-premises permit:

    .     .     .     .     .

(2) Service of at least one meal per day five days a week where said service of meal is the principal business and where at least 51% of business revenue is derived from the sale of food.

    .     .     .     .     .

(4) A printed menu and a price schedule of drinks.

2. T.C.A. § 57–5–301. *Sales to minors prohibited* ...

—(a) No person engaging in the business regulated hereunder shall make or permit to be made any sales to minors.

    .     .     .     .     .

(c) It shall be unlawful for the management of any place where any beverage licensed hereunder is sold to allow any minor to loiter about such place of business, and the burden of ascertaining the age of minor customers shall be upon the owner or operator of such place of business. ...

3. Goodlettsville Municipal Code

§ 2–214. *Suspension or revocation.* The Goodlettsville Beer Board shall have the power to revoke or suspend, and shall be charged with the duty of revoking or suspending, any permits issued by it, upon notice to the permittee and a hearing thereon, for any violation of any provision of state law regulating the sale, storage, and transportation of alcoholic beverages or for any violation of any provision of this chapter, or any other ordinance of the City of Goodletts-

(3) Failing to produce a printed menu as required by Goodlettsville Municipal Code § 2–206.

(4) Permitting disorderly conduct on the premises in violation of Goodlettsville Municipal Code § 2–214(1), (3).

On November 16, 1984, Brass A filed a petition for writ of certiorari in the Chancery Court of Davidson County, alleging that Goodlettsville's 51% rule was unconstitutional because it discriminated against a class of permittees who were incapable of compliance because they were unable to sell high-priced food, and because it bore no relation to public health, morals, or safety. The petition further alleged that there had been no evidence before the Beer Board to support its findings as to any of the aforementioned code violations.

The chancellor heard the matter de novo pursuant to T.C.A. § 57–5–109(d), without the intervention of a jury. At the close of the Beer Board's proof and argument the trial court granted Brass A's motion to dismiss on the ground stated in T.R.C.P. 41.02(2), that the Beer Board had shown no right to relief. The trial court found that Brass A had, in fact, failed to meet Goodlettsville's 51% rule, but that Brass A could not be deemed to have violated the rule because it had made food items available to its customers and so "complied with the spirit" of the rule.

Although the chancellor declined to label the 51% rule "unconstitutional," he nonetheless found its application to be "unrea-sonable" because the record, in his opinion, failed to disclose a relationship between the 51% figure and the health, morals, or safety of the public. The chancellor concluded that the City failed to prove the other charges by a preponderance of the evidence. The chancellor's decree comes to this Court accompanied by a presumption of correctness and the burden is upon appellant Beer Board to demonstrate that the evidence preponderates against the trial court's findings. *Hinkle v. Montgomery,* 596 S.W.2d 800 (Tenn.1980).

■ T.C.A. § 57–5–108(a)(1) authorizes all incorporated cities and towns in the State of Tennessee to pass ordinances governing the issuance and revocation of licenses for the storage, sale, manufacture, and distribution of beer to promote public health, morals, and safety. It has been held that the sale of beer in municipalities is subject to their police power and absolute discretion is given the governing body of the municipality to effect its regulation and control. *Watkins v. Naifeh,* 635 S.W.2d 104 (Tenn.1982); *Ketner v. Clabo,* 189 Tenn. 260, 225 S.W.2d 54 (1949).

■ The only limitation upon the exercise of power is that the appropriate board must act in good faith and not in a discriminatory and arbitrary manner. *DeCaro v. City of Collierville,* 213 Tenn. 254, 373 S.W.2d 466 (1963). Thus, the enabling statute has been given the broadest possible construction by this Court. *The Pantry Inc. v. The City of Pigeon Forge,* 681 S.W.2d 23 (Tenn.1984). This Court will pre-

---

ville, or of any private act or county court resolution, which has the effect of regulating beer or other intoxicating beverage, or when the permittee:

(1) Operates a disorderly place; or

.   .   .   .   .

(3) Permits boisterous or disorderly conduct on the premises; or

(5) Permits minors to congregate about the premises; or

.   .   .   .   .

(8) Sells or allows to be sold on the premises of the permittee any beer to any person under the age of nineteen years.

**4.** Goodlettsville Municipal Code

§ 2–216. *Prohibited acts by permit holders, agents, or employees.* It shall be unlawful for any beer permit holder, his agent, or employee:

.   .   .   .   .

(2) To make or permit to be made any sale of beer to a person under nineteen years of age.

.   .   .   .   .

(4) To allow any person under eighteen years of age to loiter or congregate about the premises. The burden of ascertaining the age of minor persons shall be on the permit holder and his agent or employee. When a minor is seated at a table there shall be no beer served at that table unless such minor is accompanied by one or both his parents, and then only if served in conjunction with food.

sume the validity of a municipal ordinance; the party challenging it has the burden of showing that it "is not reasonably related to a protectable interest or that it is oppressive in its application." *Rivergate Wine and Liquors v. Goodlettsville,* 647 S.W.2d 631, 634 (Tenn.1983).

We find that the trial court erroneously placed the burden of proving the reasonableness and validity of Goodlettsville's 51% rule on the Beer Board. Since Brass A moved to dismiss at the conclusion of the Beer Board's proof and elected to present no evidence itself, it manifestly failed to carry its burden of proof on this issue.

We find no merit in Brass A's contention that testimony elicited on cross examination from Timothy J. Myers, Goodlettsville's City Manager, and James S. Freemon, certified public accountant for Brass A, collectively established the unreasonableness and oppressiveness of the 51% rule. Myers explained that the ordinance requires a license "to have a restaurant operation [in which] the sale of alcoholic beverages more or less complements the operation of food sales, instead of being the primary business." Myers expressed the opinion that such a requirement creates "a more wholesome environment from a family standpoint," and we agree. In *City of Memphis Alcohol Commission v. Randall Memorial Free Will Baptist Church Inc.,* 550 S.W.2d 657 (Tenn.1977) we stated:

> We think it apparent that there can be a different impact upon public health, safety, and morals from the sale of beer at a tavern, where alcoholic beverages are the principal commodity sold, and the sale of beer at a family-style restaurant, where food is the principal commodity and beer is sold only to complement the food ... 550 S.W.2d at 660.

Myers went on to note the rationale underlying the ordinance: "[p]eople are required to eat along with their drink, so it obviously allows them to ... be a little bit safer." Brass A points out that the Beer Board introduced no data which demonstrated that the ingestion of food along with the consumption of alcoholic beverages tends to reduce the likelihood of intoxication.

We are of the opinion, however, that such proof was not necessary. "Facts which are universally known may be judicially noticed provided they are of such universal notoriety and so generally understood that they may be regarded as forming a part of the common knowledge of every person." *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690 (Tenn.1984). Brass A has simply not demonstrated "that there is no basis in reason for the ordinance." *Rivergate Wine and Liquors v. Goodlettsville, supra.,* at 634.

Nor do we find anything in Freemon's testimony to persuade us that the 51% rule is oppressive as it is applied to Brass A. Freemon explained that Brass A catered to a nineteen to twenty-six year old, blue-collar clientele, which he characterized as being primarily interested in entertainment. He testified that Brass A offered for sale a variety of inexpensive food items, ranging from nachos and fried specialities, such as cheese fingers and clam strips, to a $4.50 pizza. Freemon opined that Brass A would have to sell $7.00 to $9.00 food items in order to attain the 51% figure, and he speculated further that Brass A could not successfully sell such a line of food, given the type of patrons it attracted.

We observed in *Rivergate Wine and Liquors* that "[a]n exercise of the police power oftentimes burdens one or a few for the public good." 647 S.W.2d at 635. The ordinance in question does not "purport to treat similar businesses differently." *Id.* at 636. Thus, it follows that there is no discrimination against Brass A.

It was undisputed that Brass A did not, in any month, derive 51% of its business revenue from the sale of food. Freemon indicated that food sales accounted for only 23.64% to 24.7% of Brass A's revenue during a period including the fiscal year preceding the trial and the first six months of the then-current fiscal year. We find nothing in the ordinance to indicate that a licen-

see's actual noncompliance with the 51% rule is to be excused either by its efforts to make sufficient food items available for purchase by its customers or by its efforts to promote its food line.

■ We conclude as well that the evidence preponderates against the trial court's findings as to the charges that Brass A sold beer and alcoholic beverages to minors and permitted minors to loiter about the premises. The trial court found the following facts:

8. On some occasions, minors gain admittance to BRASS A by using false identification documents to show their ages to be the age of 19 years or above.

9. On occasions, minors accompanied persons of legal age (age 19 years or older) to the BRASS A and unbeknown to BRASS A, these minors consumed beer purchased by their legal-aged companions.

10. Goodlettsville policemen, while on patrol, frequently entered the premises of BRASS A to see if there were violations of the City of Goodlettsville's municipal code pertaining to the sale of beer. On occasions, these officers found what they believed to be violations of beer ordinances with respect to the sale of beer to minors or minors being on the premises either in the BRASS A building or in the Rivergate Mall parking lot adjacent to BRASS A.

Based upon the foregoing facts, the trial court made the following conclusion of law:

THE BEER BOARD OF THE CITY OF GOODLETTSVILLE failed by a preponderance of the evidence to prove the following:

1. That BRASS A was responsible for minors being in its establishment by reason of false identification documents, in view of the minors' appearance of maturity and the fact that some of the minors were in the company of a person who was far beyond the age of maturity and who shared his purchase of beer with these minors.

The record discloses that two female minors, sisters aged fourteen and seventeen, were arrested at the Brass A for public drunkenness. Both girls testified that they drank beer and liquor in the Brass A and that they were not asked for any identification while they were there. Although the girls stated that a companion who was of legal age purchased some of their drinks for them, each girl testified that she had ordered drinks herself as well. The sisters' testimony is uncontroverted and is amply supported by the testimony of a Goodlettsville police officer. The record also indicates that three other female minors, aged sixteen, seventeen, and seventeen, and one sixteen-year-old male gained admittance to the Brass A with false identification and were arrested on the premises. Both T.C.A. § 57–5–301(c) and Goodlettsville Municipal Code § 2–216 place the burden of ascertaining the age of minor customers upon the owner or operator of a business. T.C.A. § 57–5–109(b), which provides that "[n]o permit or license shall be revoked on the grounds the operator or any person working for him sells to a minor over the age of eighteen (18) years if such minor exhibits an identification, false or otherwise indicating his age to be nineteen (19) or over, if his appearance as to maturity is such that he might reasonably be presumed to be of such age and is unknown to such person making the sale," has no application to the case at bar. Although one incident at the Brass A did involve an eighteen-year-old minor whose size and appearance suggested that he might have been somewhat older, none of the aforementioned incidents involved minors over the age of eighteen.

We are of the opinion, however, that the trial court properly concluded that the evidence did not support the Beer Board's allegation that Brass A did not have a printed menu. The record indicates that Brass A kept a pizza menu posted on a wall and that it also had small printed hand-out menus.

■ Likewise, we are of the opinion that the evidence does not preponderate against the trial court's finding that the Beer

Board failed to prove its allegation that the Brass A permitted disorderly conduct on the premises. There was testimony that a number of arrests had indeed been made for public drunkenness and disorderly conduct in the parking lot outside the Brass A, but the evidence established as well that the parking lot was shared by a movie theater, a billiards center, a liquor store, and another tavern. Several of the incidents relied upon by the Beer Board were not shown to have been connected with the Brass A at all, and on a number of occasions, the Brass A was itself the complainant who called for police assistance. The two arrests made inside the Brass A did not involve conduct that was boisterous or disruptive.

Because the Brass A failed to comply with Goodlettsville's 51% rule, permitted minors to loiter or congregate about the premises, and permitted the sale of beer and alcoholic beverages to minors, we find the revocation of its on-premises beer permit to have been proper.

The chancellor's decree is reversed and the Beer Board's action affirmed. Costs of this appeal are taxed to appellee.

BROCK, C.J., COOPER and HARBISON, JJ., and CANTRELL, Special Justice, concur.

## OPINION ON PETITION TO REHEAR

FONES, Justice.

The Brass A Saloon of Rivergate, Inc. has filed a petition to rehear asserting that this Court having found that the chancellor erred in granting its motion to dismiss at the end of the Beer Board's proof, should have remanded the proceeding to the trial court to give it the opportunity to put on proof of compliance with the applicable ordinances of the City of Goodlettsville.

We would have taken that action but for the status of the record before us. The president of the corporation and its accountant have testified that the Brass A Saloon has not and cannot meet the requirement of 51% business revenue derived from food, giving the express figures of 18% for one applicable period and 24% for another applicable period. We have rejected its legal, technical and constitutional arguments and it is clear that no factual proof could possibly be adduced on remand that would alter the result on the 51% sale of food issue.

Under Goodlettsville's ordinance 2–206, the 51% sale of food requirement is one of the four mandatory requirements of an on-premises beer permit. It follows that neither the beer board nor the chancery court nor this Court has any discretion with respect to a lesser penalty than revocation for the violation of that ordinance.

It being impossible for defendant's proof to change the result of this lawsuit, no reason exists for a remand. The petition to rehear is denied. Costs are adjudged against Brass A Saloon.

BROCK, C.J., COOPER and HARBISON, JJ., and CANTRELL, Special Justice, concur.