**METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Appellant,**

v.

**Ronald D. SHAW, Appellee.**

Supreme Court of Tennessee,
at Nashville.

Dec. 8, 1986.

Mary S. Foust, Metropolitan Atty., Nashville, for appellee.

## OPINION

COOPER, Justice.

This is an appeal from a judgment holding unconstitutional Metropolitan Government Ordinance 5–1–23.2, prohibiting "brown-bagging" in establishments licensed to sell beer for on-premises consumption, and dismissing a misdemeanor warrant charging Ronald Shaw with violation of the ordinance.

Mr. Shaw was the operator of a tavern known as "Our Place," which was licensed to sell beer for on-premises consumption. During a regular tavern check, Metropolitan Police Sergeant Mike Windsor found several open bottles of liquor on tavern tables. It was determined that the bottles had been brought onto the premises by patrons, and that the patrons had been buying mixers from the tavern bartender. Sergeant Windsor secured a warrant charging Mr. Shaw, as holder of the tavern beer license, with violating Metropolitan Code Section 5–1–23.2. The ordinance makes it unlawful for the holder of a Metropolitan beer license to allow any alcoholic beverage with an alcohol content in excess of five percent to be brought onto the licensed premises, unless the establishment is also licensed to serve liquor by the drink.

On trial in the sessions court, Mr. Shaw was found guilty and was fined $10.00. He appealed his conviction to the circuit court, with the result that the charges were dismissed after a *de novo* hearing. The bases of the trial judge's holding were that the ordinance contravened the general laws of the State of Tennessee and there was no rational basis for the ordinance.

Metropolitan Government has filed a comprehensive brief in support of its appeal. Unfortunately, appellee is not represented by counsel in this court, and has not made a personal appearance or filed a brief, leaving us to draw upon the limited record in the trial court to determine the position of appellee. We have concluded from a study of the record and the applica-

ble law, that the trial judge erred in holding the ordinance to be unconstitutional, that Metropolitan Government had the authority to pass the ordinance and that its purpose is related to a legitimate interest protectable by the police power.

The power to regulate the sale of beer has been delegated by the Legislature to the county and municipal governments of Tennessee. T.C.A. § 57–5–104. T.C.A. § 57–5–108 grants Metropolitan Government, as a class B county, not only the power granted counties generally, but the power granted cities to adopt such additional "rules and regulations as will promote public health, morals and safety as they may by ordinance provide."

In upholding an ordinance prohibiting the sale of beer in a zoned area in the City of Dayton, this court pointed out in *Barnes v. City of Dayton*, 216 Tenn. 400, 392 S.W.2d 813 (1965), that:

'It is almost universally recognized that the intoxicating liquor business of all kinds is potentially, if not actually, dangerous or harmful to the public health, morality and welfare, and that consequently it is subject to strict supervision or prohibition by states and also by municipalities where they are authorized to act in the matter....', quoting *Smiddy v. City of Memphis*, 140 Tenn. 97, 203 S.W. 512 (1918) at pp. 260, 261.

Ordinances regulating the sale of alcoholic beverages have been consistently upheld where they bear some relation to a legitimate interest protectable by the police power, and the regulation is not unreasonable or oppressive as to the licensee. *Rivergate Wine and Liquors v. Goodlettsville*, 647 S.W.2d 631 (Tenn.1983); *Metro Government of Nashville and Davidson County v. Martin*, 584 S.W.2d 643 (Tenn. 1979). For example, it has been held reasonable to prohibit the storage or possession of beer in certain locations within the city limits, *McHugh v. Mayor and Aldermen of Morristown*, 186 Tenn. 175, 208 S.W.2d 1021 (1948); to prohibit the sale of beer in localities that would cause traffic congestion, *Barnes v. City of Dayton*, 216 Tenn. 400, 392 S.W.2d 813 (1965); to limit the number of permits to sell beer, *DeCaro v. Collierville*, 213 Tenn. 254, 373 S.W.2d 466 (1963); to prohibit the sale of beer in an establishment which also houses a gun shop, *Gibbs v. Blount County Beer Board*, 664 S.W.2d 68 (Tenn.1984); to limit the issuance of liquor licenses to one family to two licenses, *Parks v. Allen*, 426 F.2d 610 (5th Cir.1970); to prohibit a licensed retailer from selling chilled or refrigerated alcoholic beverages, *Rivergate Wine & Liquors v. Goodlettsville*, 647 S.W.2d 631 (Tenn.1983).

There is no question but that a local government has a legitimate interest in diminishing the number of incidents of public drunkenness and the number of intoxicated drivers operating within the city limits. *See Rivergate Wine & Liquors v. Goodlettsville*, 647 S.W.2d 631 (Tenn.1983). This interest is furthered by ordinances which regulate the sale of beer for on-premises consumption, of which the anti "brown bagging" ordinance is a part. For example, Metropolitan Code of Laws, Section 5–1–18.3 provides that permits to sell beer for on-premise consumption shall not be issued except to establishments that have seating capacity for 25 persons and where meals are regularly served. This requirement increases the likelihood of joint consumption of food and alcohol and thereby lessens the intoxicating effect of the alcohol consumed on the premises. Metropolitan Government also has an ordinance which prohibits the sale of beer to any person who is already intoxicated. Metropolitan Code of Laws, Section 5–1–23.3(j). State law also prohibits the sale of mixed drinks, which are only legally sold for on-premise consumption, to anyone who is "visibly intoxicated," T.C.A. § 57–4–203. These requirements evidence an awareness on behalf of the governments that the consumption of alcohol to the point of intoxication impacts on the general health and welfare of the community.

In this case, there is evidence that "brown bagging," which is generally unregulated, is a prime cause in incidents of public drunkenness and of drivers operating automobiles while under the influence of an intoxicant. According to Sergeant Windsor, the police are required to respond to many more calls to beer taverns that permit "brown bagging" than they do to establishments that "ha[ve] a liquor license or ha[ve] just a plain beer license." In Metropolitan Nashville, sales of beer must cease between the hours of 3:00 a.m. to 6:00 a.m., except for Sunday morning, when sales are prohibited from 3:00 a.m. to 12:00 noon. There is evidence that licensed beer taverns catering to "brown baggers," remain open during the hours beer sales are prohibited in order to sell mixers to the "brown baggers" and to provide them with a place to continue their drinking. Further, statistics in the record indicate that seventeen percent of all tests performed in 1985 in Metropolitan Nashville for possible DUI violations were performed in the three hour period when beer sales are not permitted.

The one method undertaken by Metropolitan Government to attempt to reduce the incidents of public intoxication and DUI violations is by prohibiting "brown bagging" in all establishments licensed by Metropolitan Government to sell beer for on-premises consumption. This may not be the best way to reach the result sought, but it does have some relation to a legitimate interest of Metropolitan Government and, in our opinion, is a valid exercise of its police power.

For the reason stated above, we hold the challenged ordinance constitutional. The judgment of the circuit court is accordingly reversed and the cause is remanded for further proceedings. Costs of this appeal are taxed against the appellee, Ronald Shaw.

BROCK, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.