# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 8, 2014 Session

## G and N RESTAURANT GROUP, INC. d/b/a CITY CAFÉ DINER v. CITY OF CHATTANOOGA

**Appeal from the Chancery Court for Hamilton County**
**No. 11-0671     W. Frank Brown, III, Chancellor**

---

**No. E2013-02617-COA-R3-CV-FILED-OCTOBER 8, 2014**

---

This action involves the constitutionality of a city ordinance regulating beer sales by establishments operating twenty-four hours a day. In June 2006, the defendant city amended its beer ordinance, which previously had required restaurants serving beer and other alcoholic beverages to serve no alcohol between the hours of 3:00 a.m. and 8:00 a.m. on weekdays and 3:00 a.m. and 12:00 noon on Sundays. Pursuant to the amended code section, no establishment remaining open for business of any type between the hours of 3:00 a.m. and 8:00 a.m. is permitted to simultaneously maintain a beer permit. The plaintiff restaurant is located within a hotel in Chattanooga and serves a wide variety of food items twenty-four hours a day. Upon its opening in 2004 and subsequent reopening in April 2006, pursuant to the unamended version of the city code, the restaurant served beer during the hours allowed. The restaurant continued to serve beer until it received a letter alleging a code violation from the Chattanooga Police Department in June 2011. Following a mandatory appearance before the Chattanooga Beer Board, the restaurant surrendered its beer permit. The restaurant brought this action in the trial court, alleging that the city code subsection at issue violated the restaurant's substantive due process rights pursuant to the Fourteenth Amendment of the United States Constitution and article 1, section 8 of the Tennessee Constitution. The trial court ruled in favor of the city, finding, *inter alia*, that the code subsection was rationally related to a legitimate government interest. The restaurant appeals. Because we determine that the code subsection is not rationally related to a legitimate government interest, we reverse the judgment of the trial court and grant the restaurant's request for a judgment declaring the subsection to be constitutionally invalid. We remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

William G. Schwall, Chattanooga, Tennessee, for the appellant, G and N Restaurant Group, Inc. d/b/a City Café Diner.

Kenneth O. Fritz, Chattanooga, Tennessee, for the appellee, City of Chattanooga.

**OPINION**

I.  Factual and Procedural Background

The plaintiff, G and N Restaurant Group, Inc. ("G & N"), operates a family-style restaurant under the name of City Café Diner ("City Café") within a Best Western Hotel located on Lee Highway in Chattanooga, Tennessee.[1]  City Café is open twenty-four hours a day and serves breakfast, lunch, and dinner, with all food items available around the clock. Upon its initial opening in 2004, City Café obtained a permit to sell beer and accordingly limited its beer sales to the hours then prescribed by the defendant, the City of Chattanooga ("the City").

Pursuant to the applicable section of the Chattanooga City Code in effect at the time G & N obtained its beer permit, City Café was not permitted to serve beer during the hours of 3:00 a.m. and 8:00 a.m. on weekdays and 3:00 a.m. and 12:00 noon on Sundays.  Section 5-47 of the Chattanooga City Code, as it existed from the time of G & N's opening until the subsequent amendment, provided:

> **Sec. 5-47.  Hours regulated.**
>
> (a)  No permittee under this article may sell or give away alcoholic beverages or malt beverages or permit the same to be consumed on the premises except during the same hours authorized by the state alcoholic beverage commission for establishments selling liquor by the drink.  All beer, glasses and containers must be clear of the tables at the end of serving hours.

---

[1]G & N's president testified that he first opened a City Café Diner located in downtown Chattanooga in 2003 but that ownership of that location is through a separate corporation.  The downtown City Café is not at issue in this appeal.  For ease of reference and readability, we will refer to the Lee Highway location as "City Café" in this opinion.

(b)     No permittee under this article may sell or give away alcoholic beverages or malt beverages or permit the same to be consumed on the licensed premises between the hours of 3:00 a.m. and 8:00 a.m. on weekdays or between the hours of 3:00 a.m. and 12:00 noon on Sundays.

In June 2006, the City's Beer Board approved Ordinance 11845, amending section 5-47 by adding two subsections, to become effective on July 15, 2006. The amendment at issue is subsection (c), which provides in pertinent part:

(c)     No permittee whose permit authorizes sale for on premise consumption shall be open for business except during hours authorized by Sub-Section (b) above for consumption of alcoholic beverages on the licensed premises.

Subsection 5-47(d), also added by enactment of Ordinance 11845, prohibits permittees from allowing "any person under the age of twenty-one (21) to be in, frequent or loiter about the premises of the licensee unless such underage person is accompanied by their parent or their legal guardian after 6:00 p.m." Subsection (d) expressly states that it does not apply to permittees whose annual sales of food prepared in a fully functioning kitchen comprise more than fifty percent of total sales. For this reason, subsection (d) does not affect G & N, and its constitutionality has not been questioned in this action.

It is undisputed that prior to the amendment's effective date, G & N had never been cited for a violation of section 5-47. However, on June 21, 2011, City Beer Inspector, Chattanooga Police Department Sergeant Mark Haskins, responded to a report he had received that City Café was open for business twenty-four hours a day by issuing a letter requiring the restaurant to show cause why it was not in violation of subsection 5-47(c). G & N's president, Lee Epstein, appeared before the Chattanooga Beer Board on July 7, 2011, and surrendered G & N's permit to sell beer. Mr. Epstein testified that when he appeared before the Beer Board, he realized his only option was to surrender City Cafe's beer permit if the restaurant were to remain open twenty-four hours a day.

On August 31, 2011, G & N filed a complaint in the Hamilton County Chancery Court, requesting declaratory judgment that subsection 5-47(c) of the City Code was constitutionally invalid, a preliminary injunction restraining the City from enforcing the provision, damages in the amount of $4,500.00 per month since May 1, 2011, and reasonable attorney's fees. G & N averred that subsection 5-47(c) violated its substantive due process rights under the Fourteenth Amendment of the U.S. Constitution and article 1, section 8 of the Tennessee Constitution. G & N also averred that subsection 5-47(c) created an

impermissible classification of one because there were no other twenty-four-hour restaurants in the City that sold beer at the time the amendment to the Code was ratified. The City filed an answer, requesting dismissal of the action.

Following a bench trial conducted on October 21, 2013, the trial court entered a Memorandum Opinion and Order on October 31, 2013, upholding subsection 5-47(c) as constitutional and specifically finding, *inter alia*, that the subsection did not create a special classification. The court denied G & N's request for declaratory judgment and dismissed its claims with prejudice. G & N timely appeals.

## II. Issues Presented

On appeal, G & N presents two issues, which we restate slightly:

1. Whether the trial court erred by finding that subsection 5-47(c) of the Chattanooga City Code is constitutional and does not violate G & N's due process rights pursuant to the Fourteenth Amendment of the United States Constitution and article 1, section 8 of the Tennessee Constitution for lack of rationality.

2. Whether the trial court erred by finding that subsection 5-47(c) of the Chattanooga City Code is constitutional and does not violate G & N's due process rights pursuant to the Fourteenth Amendment of the United States Constitution and article 1, section 8 of the Tennessee Constitution by placing G & N in an impermissible class of one.

## III. Standard of Review

Tennessee's Uniform Declaratory Judgment Act provides, *inter alia*, for the determination of a law's constitutionality by declaratory action. *See* Tenn. Code Ann. §§ 29-14-101 to -113 (2012); *Thompson v. Dep't of Codes Admin., Metro. Gov't of Nashville & Davidson County*, 20 S.W.3d 654, 660 (Tenn. Ct. App. 1999) (citing *Industrial Dev't Bd. v. First U.S. Corp.*, 407 S.W.2d 457 (1966)). "Issues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness given to the legal conclusions of the courts below." *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009). Although Tennessee Code Annotated § 29-14-108 provides for the determination of an issue of fact within an action for declaratory judgment, "ideally and ordinarily" such an action does not invoke disputed issues of fact. *See Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 387 (Tenn. Ct. App. 1983). To the extent that we need to review the factual findings of the trial court, we presume those findings to be correct and will not overturn them

unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Morrison v. Allen*, 338 S.W.3d 417, 425-26 (Tenn. 2011). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006).

## IV. Substantive Due Process Claim

G & N contends that City Code subsection 5-47(c) is on its face unconstitutional and violates G & N's substantive due process rights because the subsection has no rational relation to a legitimate government interest. The City contends that the trial court properly upheld subsection 5-47(c) as constitutional because it found the subsection to be rationally related to the legitimate government interest of public safety. We determine that the addition of subsection 5-47(c) to the City Code imposes a requirement upon beer permittees with no reasonable relation to a legitimate government interest.

G & N does not dispute that the City possesses authority to pass ordinances governing the sale of beer within its corporate limits. An enabling statute, Tennessee Code Annotated § 57-5-106(a) (2013), provides in pertinent part:

> All incorporated cities, towns and Class B counties in the state of Tennessee are authorized to pass proper ordinances governing the issuance and revocation or suspension of licenses for the storage, sale, manufacture and/or distribution of beer within the corporate limits of the cities and towns and within the general services districts of Class B counties outside the limits of any smaller cities as defined in § 7-1-101 and to provide a board of persons before whom such application shall be made . . . but cities, towns and Class B counties may impose additional restrictions, fixing zones and territories and provide hours of opening and closing and such other rules and regulations as will promote public health, morals and safety as they may by ordinance provide.

As this Court has explained:

> After fourteen years of prohibition brought on by the Eighteenth Amendment to the United States Constitution, the General Assembly legalized the sale of beer in Tennessee even before the ratification of the Twenty-First Amendment [repealing prohibition]. It established a dual regulatory plan that left the taxing power to the State and the other regulatory powers to local governments. The local governments exercise their control over the sale of

-5-

beer through their authority to issue permits to persons desiring to sell beer within their respective jurisdictions.

*Martin v. Beer Bd. for City of Dickson*, 908 S.W.2d 941, 945 (Tenn. Ct. App. 1995) (footnote omitted).

Tennessee Code Annotated § 57-5-301(b)(1) (2013) provides the hours during which alcoholic beverages generally may be sold within the state, excluding the hours of 12:00 midnight through 6:00 a.m. on all days except Sunday, when the exclusion extends through 11:59 p.m. As to municipal corporations, such as the City of Chattanooga, the statute further provides in pertinent part:

> This subsection (b) shall not affect the power of governing bodies of municipal corporations or of Class B counties by ordinance to fix the hours when such beverages may be sold within the incorporated limits of such respective municipalities or within the general services districts of Class B counties outside the limits of any smaller city as defined in § 7-1-101. Municipal corporations may authorize the sale of such beverages in their respective corporate limits on Sundays or at such hours as may be prescribed by ordinance.

Tenn. Code Ann. § 57-5-301(b)(3). The City, through its previous enactment of Code subsection 5-47(b), established the hours prohibiting the sale of beer within its corporate limits to begin at 3:00 a.m. and end at 8:00 a.m. on all days except Sunday, when beer may not be sold until 12:00 noon. The enactment of subsection 5-47(c), at issue in this action, does not affect the hours set by the City for beer sales. Instead, it operates to prohibit an on-site beer permittee from remaining open for any purpose during the hours when beer sales are prohibited.

In arguing that subsection 5-47(c) is unconstitutional, G & N asserts that the subsection violates its substantive due process rights pursuant to the Fourteenth Amendment of the United States Constitution and article 1, section 8 of the Tennessee Constitution. Article 1 of the Tennessee Constitution provides:

> That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land.

As this Court has explained:

> [Tenn. Const. art. I, § 8] is similar to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State ex rel. Anglin v. Mitchell*, 596 S.W.2d 779, 786 (Tenn. 1980). The Fourteenth Amendment's protections, however, establish a minimum level of constitutional protection, *Miller v. State*, 584 S.W.2d 758, 760 (Tenn. 1979), and thus our state courts may interpret Tenn. Const. art. I, § 8 to provide greater protection than its federal counterpart. *Doe v. Norris*, 751 S.W.2d 834, 838 (Tenn. 1988).

> The courts do not use Tenn. Const. art. I, § 8 to inquire into the motives of a legislative body or to scrutinize the wisdom of a challenged statute or ordinance. *Braunfeld v. Brown*, 366 U.S. [599,] 608, 81 S.Ct. [1144,] 1148 [(1961)]; *Fritts v. Wallace*, 723 S.W.2d 948, 949-50 (Tenn. 1987); *Brumley v. Town of Greeneville*, 38 Tenn. App. 322, 326, 274 S.W.2d 12, 14 (1954). Our inquiry is more limited. Unless a fundamental right is involved, our task is to review the statute or ordinance to determine whether it bears a reasonable relation to a proper legislative purpose and whether it is neither arbitrary nor discriminatory. *Newton v. Cox*, 878 S.W.2d 105, 110 (Tenn. 1994); *Neece v. City of Johnson City*, 767 S.W.2d 638, 639 (Tenn. 1989).

*Martin*, 908 S.W.2d at 955.

It is well settled that in Tennessee, the legal ability to sell beer is not a fundamental right but "a privilege extended only by license or permit." *Medley v. Maryville City Beer Bd.*, 726 S.W.2d 891, 892 (Tenn. 1987); *see also Martin*, 908 S.W.2d at 955. Our analysis then, must focus upon whether subsection 5-47(c) of the Chattanooga City Code bears a reasonable relation to a proper legislative purpose and whether it is arbitrary or discriminatory. *Martin*, 908 S.W.2d at 955; *see also Rivergate Wine and Liquors, Inc. v. City of Goodletsville*, 647 S.W.2d 631, 634 (Tenn. 1983) (explaining that to prevail on a claim that an ordinance violates a licensee's substantive due process rights, the licensee must demonstrate that the ordinance is "not reasonably related to a protectable interest" or that it is "oppressive in its application").

In its Memorandum Opinion and Order, the trial court, after establishing that G & N's permit to sell beer is a privilege rather than a fundamental property right, further found in pertinent part:

> The court finds that [G & N] has not satisfied its burden to show that this regulation fails a rational basis review. This case is analogous to

-7-

*Rivergate Wine & Liquors v. City of Goodlettsville*, 647 S.W.2d 631 (Tenn. 1983). In that case, a wine and liquor store sued the City of Goodlettsville, challenging an ordinance prohibiting the retail sale of chilled alcoholic beverages containing more than 5% alcohol. *Id.* at 632. The plaintiff claimed that the ordinance harmed him because customers were choosing to go to liquor stores in neighboring cities where they could buy chilled wine. The Tennessee Supreme Court held that although the plaintiff had suffered an economic injury, the ordinance was not unreasonable, oppressive or discriminatory and that there was a rational basis for the ordinance. *Id.* at 635. The Court stated that "[c]onsidering this Court's recent decisions holding that municipalities, in the exercise of their police power, are given wide discretion in regulating the sale of intoxicating beverages, we think that Plaintiff's economic interest, in and of itself, is of no legal significance." *Id.* at 636 (citations omitted).

In this case, the City stated at trial that the purpose of § 5-47(c) is to prevent the type of violent fights that typically arise late at night after people have been consuming alcohol. The safety and welfare of a City's citizens is clearly a legitimate government interest. As the Tennessee Supreme Court stated in *Rivergate Wine & Liquors*, a statute can pass rational basis review when its purpose is to "diminish[] the number of incidents of public drunkenness and the number of intoxicated drivers within the city limits." *Id.* at 635. Additionally, this ordinance is rationally related to that legitimate government interest because it regulates the late-night hours of those businesses licensed to sell beer.

. . .

In this case, G&N has not met its very high burden of proof. Therefore, the court denies relief for any substantive due process claim that [G&N] may have asserted pursuant to the constitutions of the federal government or the State of Tennessee.

We agree with the trial court's finding that the safety and welfare of the City's citizens is a legitimate government interest. We note also that Tennessee Code Annotated § 57-5-301(b)(3) specifically enables a city's regulation of the hours beer may be sold and that Tennessee Code Annotated § 57-5-106(a) authorizes a city to enact ordinances imposing additional restrictions on opening and closing hours. Moreover, it is well settled in Tennessee that regulation of the hours alcoholic beverages are sold is reasonably related to

the legitimate government interest of protecting "the good order and quiet of the city." *See Smith v. City of Knoxville*, 40 Tenn. 245, at *2 (1859).

Our analysis does not end here, however, because the subsection at issue does not actually affect the hours when beer can be sold within the incorporated limits of the City. Before passage of the ordinance enacting subsection 5-47(c), subsection 5-47(b) already provided the exact same regulation of the hours beer could be sold, as well as providing for enforcement of that regulation. We determine that subsection 5-47(c) does not bear a reasonable relation to the City's stated goal of public safety, specifically, as the trial court noted, preventing violent fights that arise with consumption of alcohol. Subsection 5-47(c) demands complete closure during the hours beer cannot be sold of any establishment maintaining a beer permit, rather than simply requiring that the establishment cease selling beer during those hours. Restaurants such as G & N are then forced to choose between operating without a beer permit and serving early morning breakfast, an activity not shown as related to violent behavior, or maintaining a beer permit and closing during the restricted hours in order to serve beer with lunch and dinner later in the day.

The City argues that the original ordinance was cause for confusion among beer permit holders and that clarification was needed regarding when permittees were allowed to be open for business. The City maintains that this need for clarification and the ultimate purpose of public safety constituted the rational basis for enacting subsection 5-47(c). G & N argues that the City's rationale for implementing subsection 5-47(c) reveals a law enforcement concern rather than a rational basis for demanding that all on-premise beer permit holders close completely during the hours they cannot sell beer. We agree with G & N on this point.

Sergeant Haskins testified through deposition, which was admitted at trial upon stipulation of the parties. According to Sergeant Haskins, he first suggested to the Beer Board the 2006 section 5-47 amendments based upon difficulties his department had experienced in enforcement of the previous version. As Sergeant Haskins further explained:

> We were having problems with places that had a beer license that were supposedly closing at three, but then they were still continuing to serve or appearing to continue to serve. We had officers going into places that there was still beer on the table or liquor on the table, and then there was a controversy of whether there was brown-bagging or not, whether the business had provided it or the person had brought it in themselves and it was hard for our officers to distinguish what was what.

-9-

Sergeant Haskins noted that approximately nine hundred establishments in Chattanooga held on-premise beer permits at time of trial, including convenience stores, restaurants, bars, and clubs. When questioned regarding which establishments had exhibited the problems leading to his suggestion to the Beer Board, Sergeant Haskins specifically named one pub and grill that had repeatedly closed at 3:00 a.m. only to reopen well before 8:00 a.m. He acknowledged that he knew of no allegations that G & N had sold or served beer during the prohibited hours.

When Sergeant Haskins was questioned regarding how he interpreted the previous version of section 5-47 to be confusing, the following exchange ensued:

| | |
|---|---|
| G & N's Counsel: | Well, Subsection A specifically states that "All beer, glasses and containers must be clear of the tables at the end of serving hours." Now, wouldn't that mean that all beer and other alcoholic beverages had to be off the table by 3:00? |
| Sergeant Haskins: | Yes, but it doesn't say after that. Again, that might be open to interpretation. |
| G & N's Counsel: | So if you came in at 3:15 and you saw beer on the table, that would be a violation; would it not? |
| Sergeant Haskins: | Yes. |

Sergeant Haskins explained that an establishment cited with a violation would be brought before the Beer Board. Proof of such violation might result in loss of the establishment's permit. He opined that the enactment of subsection 5-47(c) had alleviated problems of police officers' "trying to determine are they closed, are they open, who brought this liquor in, who didn't bring this liquor in."

G & N asserts, and the City does not dispute, that prior to surrendering its beer permit, it had never been cited for a violation of the applicable City Code section. Mr. Epstein testified that the City Café had strictly complied with 5-47(a) and (b) by storing beer in a locked cabinet during the prohibited hours and clearing all beer containers from tables fifteen minutes before such sales were required to end. He explained that on weeknights, "[a]t 2:30 in the morning we called last call. By 2:45 everything would be off the table no matter what. If they're still drinking, it's too bad, comes off the table. At 2:45 the beer cabinet gets locked period."

According to Mr. Epstein, it was not feasible for City Café to wait until 8:00 a.m. to open for breakfast, which would have enabled it to maintain its beer permit following enactment of subsection 5-47(c). As he explained, peak hours for breakfast were typically 5:00 a.m. through 7:00 a.m. Mr. Epstein stated that after G & N surrendered its beer permit, overall sales at the City Café dropped. He related that although beer sales accounted for only one to two percent of overall sales, "people that come in to eat right now like to have a beer, and they leave us to go eat with our competition because they cannot have a beer or a glass of wine with their food." He further testified that he had received complaints from the hotel in which City Café is located because the hotel began losing business when customers learned they could not buy beer at the restaurant. When asked if City Café had lost its competitive edge with the surrender of its beer permit, Mr. Epstein answered, "Absolutely."

The trial court determined our Supreme Court's decision in *Rivergate* to be analogous to the case at bar. We disagree. The analogy drawn by the trial court relies upon a finding that the City Code subsection at issue here satisfies a rational basis review. The trial court found that the subsection's purpose was, as with the purpose found for the ordinance at issue in *Rivergate*, to "diminish[] the number of incidents of public drunkenness and the number of intoxicated drivers within the city limits." *See Rivergate* 647 S.W.2d at 635. If our review in the instant action were of subsection 5-47(b), the limitations imposed upon the hours during which beer can be sold would be rationally related to reducing incidents of public drunkenness. Subsection 5-47(c), however, upon which our analysis must focus, does not operate to limit the sale of beer any further than the unamended City Code section did, provided it were enforced. Subsection 5-47(c) simply closes the doors of all beer permittees during the prohibitive hours. As the trial court noted, our Supreme Court held in *Rivergate* that "If the ordinance has a rational basis, economic injury alone will not invalidate the ordinance." *Id.* (emphasis added). The *Rivergate* plaintiff failed to carry its burden in part because the "major portion of the Plaintiff's proof concern[ed] the effect of the ordinance on the Plaintiff's economic interests." *Id.* We determine the proof in the instant action to be distinguishable from that in *Rivergate* because in addition to presenting testimony regarding economic injury, G & N first has demonstrated that no rational basis exists for the provision of subsection 5-47(c).

While noting that the enabling statute "has been given the broadest possible construction," the Tennessee Supreme Court has also explained that the restrictions and regulations chosen by a city must bear a "reasonable relation to the public health, morals, and safety" of the city's people. *See The Pantry, Inc. v. City of Pigeon Forge*, 681 S.W.2d 23, 23-24 (Tenn. 1984). The city ordinance under review in *The Pantry* required that an applicant for a beer permit "have 3,500 sq. ft. of heated, enclosed floor space." *Id.* at 23. Determining that the requirement specifying 3,500 square feet bore no reasonable relation to public health, morals, or safety and was instead "unreasonable and arbitrary," our Supreme

Court affirmed the trial court's invalidation of that portion of the ordinance and grant of a permit to the plaintiff, whose proposed location contained 2,400 square feet of heated, enclosed floor space. *See id.* at 23-24. More recently, this Court has held that although a municipal ordinance restricting the number of beer permits within its boundaries is reasonably related to a legitimate government interest, it was "an arbitrary exercise" for an ordinance to limit eligible permit applicants to entities specifically named in the ordinance and reduce the number of permits available if any of those specific applicants failed to exercise the privilege. *See Dixon v. Lawrenceburg Beer Bd.*, No. 01-A-01-9809-CH00484, 1999 WL 499731 at *2 (Tenn. Ct. App. July 16, 1999).

Similarly, we determine that inasmuch as the pre-existing subsections of Chattanooga City Code 5-47 established the hours during which the City prohibited beer sales, no rational basis related to the public health, morals, and safety of the City's people existed to require that all beer permit holders, regardless of their type of business, close completely during those hours. An amendment forcing establishments such as G & N to choose between providing twenty-four-hour food service without a beer permit and operating during specific times for the privilege of selling beer during permissible hours imposes arbitrary limits on those establishments, the parameters of which are not a reasonable exercise of a municipality's police power. *See Dixon*, 1999 WL 499731 at *2 (noting that while a permit to sell beer is "subject to a reasonable exercise of the police power" (citing *Rivergate*, 647 S.W.2d at 631), "[i]t is a limited privilege, and once properly conferred, it may not be arbitrarily taken away" (citing *Wise v. McCanless*, 191 S.W.2d 169 (Tenn. 1945))).

### V.  Equal Protection Claim

G & N also contends that the trial court erred by failing to find that subsection 5-47(c) of the City Code violates the Fourteenth Amendment of the United States Constitution and article 1, section 8 of the Tennessee Constitution by intentionally treating G & N differently than other similarly situated establishments without a rational basis for the difference. Upon a careful and thorough review of the record, we determine that the trial court did not err in this regard. As the trial court noted in its Memorandum Opinion and Order, this issue sounds within the Equal Protection Clause of the United States Constitution, applicable to the state through the Fourteenth Amendment, and in article I, section 8 and article XI, section 8 of the Tennessee Constitution.

As this Court has explained:

> The Equal Protection Clause of the United States Constitution provides that "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Likewise, article I,

-12-

section 8 and article XI, section 8 of the Tennessee Constitution "guarantee equal privileges and immunities for all those similarly situated." *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993). [O]ur Supreme Court has "consistently held that the state equal protection guarantee is co-extensive with the equal protection provisions of the . . . U.S. Constitution[.]" *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 518 (Tenn. 2005) (citing *Tenn. Small Sch. Sys.*, 851 S.W.2d at 152)[.]

Our Supreme Court has adopted an analytical framework for analyzing equal protection challenges pursuant to the Tennessee Constitution similar to that used by the United States Supreme Court. *Gallaher v. Elam*, 104 S.W.3d 455, 460 (Tenn. 2003) (citing *State v. Robinson*, 29 S.W.3d 476, 481 (Tenn. 2000)). "Under this framework, one of three standards of scrutiny applies, depending upon the nature of the right asserted or the class of persons affected: (1) strict scrutiny; (2) heightened scrutiny; or (3) reduced scrutiny, applying the rational basis test." *Id.* (citing *Robinson*, 29 S.W.3d at 481).

*Dr. Pepper Pepsi-Cola Bottling Co. of Dyersburg, LLC v. Farr*, 393 S.W.3d 201, 209 (Tenn. Ct. App. 2011). In the instant action, it is undisputed that inasmuch as a beer permit is a privilege rather than a fundamental right, the rational basis test would apply if indeed subsection 5-47(c) of the City Code created a classification specific to G & N.

G & N's contention that the City intentionally treated it differently than similarly situated establishments is grounded in G & N's assertion that it was the only twenty-four-hour restaurant maintaining a beer permit in Chattanooga at the time the 2006 amendment to section 5-47 was enacted. Even assuming, *arguendo*, that G & N is correct in this assertion,[2] we conclude that the trial court did not err by finding this equal protection claim to be unavailing. As the City notes, subsection 5-47(c) was enacted to apply to all permittees equally and while in effect, prevented any twenty-four-hour restaurant from seeking a beer permit unless the owner was willing to close the restaurant's doors during the hours beer sales were prohibited. Moreover, G & N presented no proof that the City intentionally treated it differently than other similarly situated permittees. *See Sioux City Bridge Co. v. Dakota County, Neb.*, 260 U.S. 441, 445 (1923) ("The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination . . . ."). This issue is without merit.

---

[2]The City presented no evidence of similarly situated twenty-four-hour restaurants in Chattanooga that possessed beer permits at the time of the enactment of subsection 5-47(c).

## VI. Conclusion

For the reasons stated above, we reverse the trial court's judgment dismissing G & N's request for declaratory judgment, and we declare subsection 5-47(c) of the Chattanooga City Code to be constitutionally invalid. This case is remanded to the trial court, pursuant to applicable law, for further proceedings consistent with this opinion. Costs on appeal are taxed to the appellee, the City of Chattanooga.

_____
THOMAS R. FRIERSON, II, JUDGE